**O**

# United States District Court
# Central District of California

AARON MENDELSOHN,

          Plaintiff,

  v.

ALVIN BRAGG,

          Defendant.

Case № 2:24-cv-07420-ODW (JPRx)

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND DENYING DEFENDANT'S EX PARTE APPLICATION [26] [43]**

## I.    INTRODUCTION

Plaintiff Aaron Mendelsohn brings this action against Defendant Alvin Bragg, in his official capacity as the District Attorney of New York County, New York ("DANY"), asserting one cause of action for declaratory relief.  (Compl. ¶¶ 44–48, ECF No. 1.)  DANY moves to dismiss Mendelsohn's claims under Federal Rules of Civil Procedure ("Rule" or "Rules") 12(b)(1), 12(b)(6), and 12(b)(7).  (Mot. Dismiss ("Motion" or "Mot."), ECF No. 26.)  For the reasons below, the Court **GRANTS** the Motion.[1]  Consequently, the Court **DENIES** DANY's Ex Parte to Stay Discovery as moot.  (Ex Parte Appl., ECF No. 43.)

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II.   BACKGROUND[2]

In 2007, Mendelsohn bought an ancient Roman bronze statue (the "Bronze Male") from a New York City art gallery for $1.33 million.   (Compl. ¶¶ 10, 13.) Shortly thereafter, Mendelsohn moved the Bronze Male to his home in Santa Monica, California.   (*Id.* ¶ 11.)  Since August 6, 2007, the Bronze Male has not left California. (*Id.*)

On December 28, 2023, an Assistant District Attorney ("ADA") contacted Mendelsohn and informed him that DANY was investigating "stolen and trafficked monumental Roman bronzes," with the goal of returning the antiquities to the country of Turkey.   (*Id.* ¶ 24.)  The ADA told Mendelsohn that he believed that the Bronze Male was one of these bronzes, and that Mendelsohn could have time to speak with an attorney before discussing a path forward.   (*Id.*)   Before this, Mendelsohn was unaware of any claim of ownership by another person over the Bronze Male and no one had questioned Mendelsohn about his status as the rightful owner of the Bronze Male.  (*Id.* ¶¶ 21, 23.)

On January 5, 2024, the ADA asked Mendelsohn, via email, whether he had retained counsel.  (*Id.* ¶ 25.)  The ADA stated that if he did not hear from Mendelsohn "by the end of next week, DANY would be forced to start taking steps forward on its case."  (*Id.* (cleaned up).)  Six days later, the ADA told Mendelsohn he had until the "end of next week" to respond.  (*Id.* ¶ 26.)  The ADA also "purported to serve, via email a [grand jury] subpoena *duces tecum*," on Mendelson, requesting documents and correspondence related to his possession of the Bronze Male.   (*Id.* ¶¶ 26–27 (internal quotation marks omitted).)  This grand jury subpoena purported to require Mendelsohn, a California resident, to appear before the New York grand jury within one week of his receipt of the subpoena.  (*Id.* ¶ 27.)  DANY signed and served the subpoena, even though he knew that he lacked jurisdiction over Mendelsohn, as the

---

[2] All factual references derived from Mendelsohn's Complaint, as well-pleaded factual allegations are accepted as true for purposes of this Motion.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

subpoena was not legally enforceable in California without proper process. (*Id.* ¶ 28.) Mendelsohn did not accept service of the subpoena. (*Id.* ¶ 29.) DANY has since withdrawn the subpoena. (Opp'n 6 n.2, ECF No. 32; Decl. Marcus Asner ISO Opp'n ("Asner Decl.") ¶¶ 5–6, ECF No. 32-1; Decl. Alexander Sanyshyn ISO Mot. ("Sanyshyn Decl.") ¶ 3, ECF No. 26-1.)

Since these emails, Mendelsohn's counsel and DANY have discussed DANY's investigation, including during reverse proffer sessions. (Compl. ¶ 30.) Mendelsohn asserts that DANY's evidence is based "on inconsistent and incomplete historical records, unreliable testimony from a single witness," and "highly suggestive photo arrays." (*Id.* ¶ 31.) He contends that this evidence does not provide a sufficient basis to conclude that the Bronze Male was illegally exported from Bubon (modern day Turkey) in the 1960s. (*Id.*)

DANY has claimed New York law provides it authority to seize the Bronze Male. (*Id.* ¶ 34.) Once seized, DANY intends to seek a turnover order under New York law to deliver the stolen property to Turkey upon satisfactory proof of title. (*Id.*) However, Mendelsohn asserts that DANY does not have jurisdiction to prosecute alleged criminal possession of stolen property that resides in California. (*Id.* ¶ 35.) Thus, he claims that DANY's reliance on New York's penal law is an effort to evade any civil legal process. (*Id.* ¶ 37.) On August 8, 2024, DANY gave Mendelsohn twenty-one days to sign a stipulation relinquishing his claim of ownership over the Bronze Male, so that DANY could repatriate the statue to Turkey. (*Id.* ¶ 38.) DANY has also threatened to obtain and execute a warrant to seize the statue from Mendelsohn's Santa Monica residence.

Based on the above allegations, and "given the threat that DANY may further leverage its asserted authority over" the Bronze Male "in contravention of proper legal process," Mendelsohn filed this action on August 30, 2024. (*Id.* ¶ 41.) Mendelsohn alleges one cause of action for declaratory relief under the Declaratory Judgment Act, 28 U.S.C § 2201. (*See* Compl. ¶¶ 44–48.) As relief, Mendelsohn seeks a declaration

1  "that all right, title, and interest in and to the Bronze Male is vested in
2  Mr. Mendelsohn, and that Defendant has no right, title, or interest in or to the Bronze
3  Male." (*Id.*, Prayer for Relief.) DANY now moves to dismiss the case for lack of
4  Article III standing, failure to join a necessary party, and *Younger* abstention. (Mot.)
5  The Motion is fully briefed. (Opp'n; Reply, ECF No. 36.)

## III. LEGAL STANDARD

7  As the Court finds that Mendelsohn lacks Article III standing to bring this
8  Complaint, it addresses only the legal standard for a motion to dismiss on this basis.
9  Under Rule 12(b)(1), a district court must dismiss a complaint when the court lacks
10 subject matter jurisdiction, which includes when a plaintiff lacks constitutional
11 standing. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) ("Because standing . . .
12 pertain[s] to a federal court's subject-matter jurisdiction under Article III, [it is]
13 properly raised in a motion to dismiss under [Rule] 12(b)(1)."). To satisfy Article III
14 standing, a plaintiff must show that (1) he has suffered an injury in fact that is
15 concrete and particularized and actual or imminent, not conjectural or hypothetical;
16 (2) the injury is fairly traceable to the challenged actions of the defendant; and (3) it is
17 likely, as opposed to merely speculative, that the injury will be redressed by a
18 favorable decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338–339 (2016); *Lujan v.
19 Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). The party attempting to invoke a
20 court's jurisdiction bears the burden of proof for establishing jurisdiction. *See Sopcak
21 v. N. Mountain Helicopter Serv.*, 52 F.3d 817, 818 (9th Cir. 1995).

## IV. DISCUSSION

23 DANY moves to dismiss this case because Mendelsohn lacks Article III
24 standing to assert his claim. (Mot. 12–14; Reply 6.) Mendelsohn counters that a case
25 or controversy exists to support standing and ripeness. (Opp'n 4–9.) The Court also
26 "has an independent obligation to assure that standing exists." *Summers v. Earth
27 Island Inst.*, 555 U.S. 488, 499 (2009).

28

As noted, to establish standing under Article III of the U.S. Constitution, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338 (citing *Lujan*, 504 U.S. at 560–61). "[A]t the pleadings stage, the plaintiff must allege sufficient facts that, taken as true, 'demonstrat[e] each element' of Article III standing." *Jones v. L.A. Cent. Plaza LLC*, 74 F.4th 1053, 1057 (9th Cir. 2023) (second alteration in original) (quoting *Spokeo*, 578 U.S. at 338). "If the plaintiff fails to do so, the complaint is subject to dismissal at the outset either upon motion by the defendant under Federal Rule of Civil Procedure 12(b)(1) or upon the court's own inquiry." *Id.*

"A related doctrine," ripeness, "is designed to 'separate matters that are premature for review because the injury is speculative and may never occur from those cases that are appropriate for federal court action.'" *Thomas v. County of Humboldt*, 124 F.4th 1179, 1187 (9th Cir. 2024) (quoting *Portman v. County of Santa Clara*, 995 F.2d 898, 902 (9th Cir. 1993)). Therefore, "[t]he constitutional component of the ripeness inquiry is often treated under the rubric of standing and, in many cases, ripeness coincides squarely with standing's injury in fact prong." *Id.* (alteration in original) (quoting *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000)).

Mendelsohn asserts two injuries. First, he contends that DANY's "coercive, invalid subpoena" and "threat to raid" his home, "all in the absence of jurisdiction, are 'concrete' attempts to deprive" him of his property. (Opp'n 7; *see* Compl. ¶ 3.) Second, he argues that DANY "has clouded title to the Bronze Male." (Opp'n 7.)

Assuming, without deciding, Mendelsohn pleads an injury in fact, he must still plead that his injury "is fairly traceable to the challenged conduct of" DANY and is "likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338. With respect to redressability, it must be that if the Court issues Mendelsohn's requested declaration, then DANY's attempts and threats to deprive Mendelsohn of

the Bronze Male would likely cease or the Bronze Male's title would be less clouded than at his filing of the Complaint. For instance, Mendelsohn asserts in his Opposition that a "declaratory judgment that Mr. Mendelsohn, not DANY, has superior right, title, and interest to and in the Bronze Male would halt DANY's unlawful actions and would clear the specific cloud over title to Mr. Mendelsohn's property that DANY has created." (Opp'n 8.) The Court analyzes the redressability of each purported injury.

### 1. Due Process

Mendelsohn claims that "DANY's attempts to deprive" him "of his right to possess his personal property without adjudication of ownership have caused both actual and imminent injuries." (Opp'n 5.) This purported injury stems from "a coercive, invalid subpoena and DANY's threat to raid" Mendelsohn's home, "all in the absence of jurisdiction." (*Id.* at 7.) Therefore, for Article III standing to attach, Mendelsohn's requested declaration must likely put an end to DANY's threats to seize the Bronze Male and effectively forbid DANY from seizing the statue.

To the extent that Mendelsohn claims injury from DANY's now-withdrawn grand jury subpoena, a judicial declaration would not prohibit DANY from subpoenaing Mendelsohn in the future in connection with the grand jury investigation. (*See* Compl. ¶ 27 (discussing DANY purporting to serve grand jury subpoena on Mendelsohn).) Under New York law, "[t]he showing required to sustain any subpoena . . . is that the testimony or evidence sought is reasonably likely to be relevant and material to the proceedings, and the subpoena is not overbroad or unreasonably burdensome." N.Y. Crim. Proc. L. § 610.20. Even if it is determined that the Bronze Male was not stolen and Mendelsohn has exclusive right, title, and interest to the statue, his testimony, the statue, or other material may still be relevant to the grand jury investigation and support a future subpoena. Additionally, Mendelsohn, does not ask the Court whether DANY has jurisdiction to serve a subpoena, whether domesticated or not. Accordingly, in deciding whether

Mendelsohn is entitled to his requested declaration, the Court would not answer whether DANY has jurisdiction to serve a subpoena, and thus any ruling by this Court would not prevent DANY from serving a subpoena.

Neither would Mendelsohn's requested relief—that all right, title, and interest in and to the Bronze Male is vested in Mendelsohn, and that DANY has no right, title, or interest in or to the Bronze Male—likely stop DANY's threats and ability to seize the Bronze Male. Mendelsohn does not allege that DANY has asserted superior right, title, or interest to him in the Bronze Male. (*See generally* Compl.) Per the Complaint, DANY contends that "the Bronze Male was looted and illegally exported from Bubon in the 1960s." (*Id.* ¶ 31; *see id.* ¶ 39 (alleging DANY contends the "Bronze Male was looted improperly from Turkey").) DANY is seeking to "repatriate the Bronze Male" to Turkey. (*Id.* ¶ 33; *see id.* ¶ 34 ("DANY states that it intends to seek a turnover order" to deliver the Bronze Male "to the owner upon satisfactory proof of title.").) Even more, DANY's counsel declares that DANY "has made no claim of ownership over the Bronze Male." (Sanyshyn Decl. ¶ 4.)

Still, Mendelsohn contends that his requested judicial declaration would resolve whether DANY has "a right to *seize* and *possess* the Bronze Male outside of its authority." (Opp'n 7.) This is incorrect. Mendelsohn only seeks a declaration that all right, title, and interest in and to the Bronze Male is vested in him, and that DANY has no right, title, or interest in or to the Bronze Male. Thus, this litigation *will not* determine whether DANY's seizure of the Bronze Male through any of the identified means (e.g., consensual stipulation or search warrant) would be outside of DANY's authority. Nor would a judicial resolution "halt DANY's unlawful actions." (*Id.* at 8.) In other words, even if Mendelsohn obtains the requested relief, whether DANY can seize his property via a search warrant or other means (or threaten to do so) would remain unresolved.

This is because DANY does not claim "right, title, or interest" in and to the Bronze Male. More importantly, even a valid search warrant would not grant DANY

"right, title, or interest" in and to the Bronze Male.  Title is "[t]he union of all elements (as ownership, possession, and custody) constituting the legal right to control and dispose of property."  *Title*, Black's Law Dictionary (12th ed. 2024).  As one New York court has explained, under New York law, "[t]he seizure of property . . . does not affect the title in the thing seized."  *Matter of Documents Seized Pursuant to a Search Warrant*, 478 N.Y.S.2d 490, 496 (Sup. Ct. 1984).  As to "interest," Black's Law Dictionary defines a "property interest" as "all or part of a legal or equitable claim to or right in property."  *Interest*, Black's Law Dictionary.  Somewhat circularly, it defines a "property right" as "[t]he interest, claim, or ownership that one has" in property or a "right to specific property."  *Right*, Black's Law Dictionary.  Regardless, "[t]here is no question" that a person "retains a property interest in its records seized pursuant to a search warrant."  *Matter of Documents Seized Pursuant to a Search Warrant*, 478 N.Y.S.2d at 496.  Therefore, by seizing the statue, DANY will not acquire right, title, or interest in the Bronze Male.  Accordingly, even if the Court were to issue Mendelsohn's requested declaration, the order would not prevent DANY from seizing the statue.

This ends the inquiry into whether Mendelsohn's requested relief would redress his due process injury.  Even if DANY had custody over the Bronze Male after seizing it, this would not provide DANY right, title, or interest in the statue.  But it does not even appear that DANY would have *custody* of, much less right, title, or interest in, the Bronze Male if it seized the statue pursuant to a warrant.  "Where state statutes place items seized by local law enforcement under judicial control, courts have held that seizure by police itself constitutes an assertion of jurisdiction over the seized items by the state courts."  *In re Seizure of Approximately 28 Grams of Marijuana*, 278 F. Supp. 2d 1097, 1102 (N.D. Cal. 2003) (citing *United States v. $490,920 in U.S. Currency*, 911 F. Supp. 720, 725 (S.D.N.Y. 1996) (finding statute provided *in rem* jurisdiction where statute and case law required that seized items be held "in the custody of the court")).

Under New York law, "a search warrant is a court order and process directing a police officer to conduct: (a) a search of designated premises for the purpose of seizing designated property, and to deliver any property so obtained to the court which issued the warrant." *$490,920 in U.S. Currency*, 911 F. Supp. at 725 (cleaned up) (quoting N.Y. Crim. Proc. L. § 690.05(2)(a)).  Further, "property seized pursuant to a search warrant technically remains in the custody of the court, and the District Attorney . . . possesses the property only as an officer of the court, subject to the court's direction and disposition." *Matter of Documents Seized Pursuant to a Search Warrant*, 478 N.Y.S.2d at 494; *see, e.g.*, *$490,920 in U.S. Currency*, 911 F. Supp. at 725 (interpreting "New York's warrant and seizure scheme as providing the state court with *in rem* jurisdiction until such court relinquishes its jurisdiction upon full compliance with its final disposition order regarding the seized property"); *Kerr v. Snyder*, No. 1:12-CV-1392 MAD/CFH, 2015 WL 4404342, at *12 (N.D.N.Y. July 17, 2015) ("[P]ursuant to New York's Criminal Procedure Law, property seized pursuant to a search warrant remains in the control of the issuing judge."), *aff'd sub nom. Kerr v. Morrison*, 664 F. App'x 48 (2d Cir. 2016); *see also* N.Y. Crim. Proc. L. § 690.55 (discussing court's custody of property seized pursuant to a search warrant).  In other words, after seizing the Bronze Male pursuant to a search warrant, DANY must then deliver it to the issuing New York court, which would retain custody of the statue until it disposes of the statue (e.g., to the rightful owner through a turnover order). Accordingly, it does not appear that DANY would have custody of, let alone right, title, or interest in, the Bronze Male if it seized the statue pursuant to an even extra-jurisdictional warrant.

Thus, Mendelsohn fails to show that his requested relief would redress any due process injury caused by DANY seizing the Bronze Male.

### 2.    Clouded Title

Mendelsohn asserts in his Opposition that DANY "has clouded title to the Bronze Male by raising unfounded, actionable questions regarding" his "ownership of

the statue." (Opp'n 7.) Mendelsohn makes no such allegation in his Complaint or declaration accompanying his Opposition. (*See generally* Compl; Asner Decl.) DANY does not claim ownership or title over the Bronze Male; rather, as alleged in the Complaint, DANY contends the statue belongs to Turkey. (*See* Compl. ¶ 31 (alleging that DANY claims evidence "shows that the Bronze Male was looted and illegally exported from Bubon"), ¶¶ 33–34, 38 (alleging DANY aims to repatriate the Bronze Male to Turkey).) Without any additional facts pleaded in the Complaint, Mendelsohn has not shown that any cloud DANY has created over title to the Bronze Male—injuring Mendelsohn—comes from DANY's attempts to seize the Bronze Male or any claim that DANY has superior right, title, or interest in the Bronze Male.

Thus, the Court could only lessen any cloud over Mendelsohn's title to the Bronze Male if, by granting Mendelsohn's requested relief, the result would limit Turkey from seeking to recover the statue in the future. However, Mendelsohn concedes that "this action cannot be said to impair or impede Turkey's ability to protect any" interest in the statue if the country "were to make a claim to the Bronze Male. (Opp'n 20 (internal quotation marks omitted); *see also id.* at 19 n.8 (stating that Turkey "could file a replevin action" "if it felt it had superior title").) As a result, Mendelsohn fails to show that a declaration stating "all right, title, and interest in and to the Bronze Male is vested in" Mendelsohn and DANY "has no right, title, or interest or to the Bronze Male," (Compl., Prayer for Relief(a)), would redress Mendelsohn's purported injury of a clouded title.

Absent redressability, Mendelsohn lacks Article III standing to bring this suit for the purported injury caused by DANY clouding title to the Bronze Male.

## V.   EX PARTE APPLICATION TO STAY DISCOVERY

DANY separately moves to stay discovery pending completion of its ongoing criminal investigation. (Ex Parte Appl. 1.) In his opposition to DANY's Ex Parte Application, Mendelsohn states that he consents to stay discovery pending resolution of the Motion to Dismiss, but not through the completion of DANY's criminal

investigation.  (Opp'n Ex Parte Appl. 1, ECF No. 44.)  As the Court dismisses this action because Mendelsohn lacks Article III standing, and there is now no operative complaint, the Court **DENIES** Defendant's Ex Parte Application as moot.   If Mendelsohn amends his complaint to attempt to cure the jurisdictional deficiencies described in this Order, the Court notes that, in the interest of judicial economy, it is not inclined to grant a stay of discovery for any time beyond the resolution of a subsequent motion to dismiss, if any.

## VI.    CONCLUSION

For the reasons discussed above, the Court **GRANTS** DANY's Motion to Dismiss.  (ECF No. 26.)  The case is **DISMISSED without prejudice**, and with leave to amend the jurisdictional allegations **within twenty-one (21) days of the date of this Order**.  If Mendelsohn fails to file a timely amended complaint, the Court will close this case.  Finally, as the Court dismisses this action because Mendelsohn lacks Article III standing, the Court **DENIES** Defendant's Ex Parte Application as moot. (ECF No. 43.)


**IT IS SO ORDERED.**


March 28, 2025

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**